AO 91 (Rev. 11/11)  Criminal Complaint

## UNITED STATES DISTRICT COURT

**FILED**
VANESSA L. ARMSTRONG, CLERK

JUL 11 2018

for the

Western District of Kentucky

U.S. DISTRICT COURT
WEST'N. DIST. KENTUCKY

|  |  |  |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No. 3:18 MJ-420 |
| | ) | |
| JAMES E. KEARNEY | ) | |
| | ) | |
| _Defendant(s)_ | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  April 1, 2017 through July 10, 2018  in the county of        Jefferson        in the

    Western    District of      Kentucky    , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841 | possession with the intent to distribute methamphetamine, a controlled substance |
| 18 U.S.C. § 924(c) | possession of a firearm in furtherance of a drug trafficking crime for which he can be prosecuted in a Court of the United States. |

This criminal complaint is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

_Complainant's signature_

Keith A. Bikowski, Special Agent
_Printed name and title_

Sworn to before me and signed in my presence.

Date:      07/11/2018

_Judge's signature_

City and state:        Louisville, Kentucky

Colin H. Lindsay, United States Magistrate Judge
_Printed name and title_

COMPLAINT AFFIDAVIT

Affiant, Keith A. Bikowski, a Special Agent with the Drug Enforcement Administration (DEA),

being duly sworn as an investigative or law enforcement officer of the United States within the

meaning of Title 18, United States Code, Section 2510(7), states as follows:

(Unless otherwise stated, or the context so requires, this affidavit refers to me when it says "I",

"me", or "your affiant.")


1. In 2007 I completed the Indiana State Police Training Academy in Plainfield, IN.  I served as

an Indiana State Trooper from July 2007 until September 2017 when I was accepted to the DEA

Basic Agent Training Academy.  I completed the basic agent training held at the DEA Training

Academy in Quantico, Virginia. While at the academy, I received extensive instruction and

training on surveillance techniques, arrest and control techniques, interview and interrogation

techniques, report writing, confidential source management, firearms proficiency, and drug

identification.


2. After completing basic agent training, I was assigned to the Louisville Division Office, where

I am currently serving.  During my employment with Indiana State Police as a State Trooper and

as a Special Agent with DEA, I have personally been involved in several investigations related to

drug trafficking. I have also participated in interviews of suspects involved in the possession and

sale of illegal drugs. I regularly use confidential sources and conduct surveillance of persons

involved in the possession and distribution of controlled substances. Further, I have participated

in the execution of arrests and search warrants for persons and places connected with the

1

possession, manufacture, and distribution of controlled substances to include cocaine, methamphetamine, marijuana, and synthetic cannabinoids (Spice).

3. This affidavit is submitted in support of an application for a criminal complaint for James KEARNEY for a violation of 21 U.S.C. § 841, possession with the intent to distribute methamphetamine, a controlled substance, and 18 U.S.C. § 924(c), possession of a firearm in furtherance of a drug trafficking crime for which he can be prosecuted in a Court of the United States.

4. In July, 2018 Agents became aware of a confidential source who had provided information to Seymour Police Department, Seymour, IN.  The Confidential Source (hereafter CS) claimed he/she had been traveling from the Seymour area, to Louisville for the past four months for the purpose of purchasing methamphetamine.

5.  On July 5, 2018, Seymour Police Department Detectives along with DEA Task Force Officer (TFO) Joshua Noble spoke further with the CS about the methamphetamine information.  The CS stated that he/she purchases methamphetamine from a black male named "BUBBA."  The CS makes the purchases at BUBBA's residence located at 3229 Dover Avenue, Louisville, KY. Due to the information provided by the CS, agents were able to identify Bubba as James E. KEARNEY.

The CS further stated he/she had been purchasing at least one pound of methamphetamine from KEARNEY per week for the last four months.  The CS typically paid approximately $7,000 per pound to KEARNEY.

2

6. After the information from the CS was provided, agents were able to corroborate much of the information provided by the CS.  In July 2018, DEA utilized the CS to make a controlled purchase of methamphetamine from KEARNEY.  While under control of DEA, the CS purchased approximately 1 pound of suspected methamphetamine for $7,000 at KEARNEY's residence.  During the purchase, the CS was able to see a rifle and handgun in the KEARNEY's bedroom, and several small children were present in the house.

7.  On July 10, 2018, a Kentucky State search warrant was executed at 3229 Dover Avenue, Louisville.  During the execution of the search warrant, James KEARNEY was present in the residence.  A search of the residence revealed items related to drug dealing and firearm possession within KEARNEY's bedroom.  Some of those items included a digital scale with crystal substance on and around it, plastic sandwich baggies, a large stack of US currency, 3 loaded handguns, and one loaded stolen assault type rifle.

8.  Later that day, KEARNEY was interviewed at the DEA Louisville Division Office.  After he was read Miranda Rights, KEARNEY agreed to speak with agents.  During the interview KEARNEY admitted to dealing many pounds of crystal methamphetamine.  He got out of prison in March of 2017, and began selling methamphetamine the same week he was released.  Since that time, he commonly obtained methamphetamine for approximately $200 an ounce, and $4,200 per pound.  He then resold the methamphetamine for approximately $400 per ounce, and approximately $6,800 per pound.  He sold multiple pounds of methamphetamine per week. KEARNEY claimed that he was able to receive approximately three pounds of methamphetamine from his source of supply at any time.

3

9. KEARNEY claimed ownership of the firearms located in his bedroom. He specifically spoke about the assault style rifle. KEARNEY said he obtained the rifle a couple months ago from someone who lived nearby his house. He traded that person an ounce of methamphetamine for the rifle. KEARNEY did not know it was stolen.

11. Based on the above mentioned facts, I believe probable cause exists to believe KEARNEY has committed violations of 21 U.S.C. § 841, possession with the intent to distribute methamphetamine, a controlled substance, and 18 U.S.C. § 924(c), possession of a firearm in furtherance of a drug trafficking crime for which he can be prosecuted in a Court of the United States.

Keith A. Bikowski, Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me this 11th day of July, 2018.

COLIN H. LINDSAY
UNITED STATES MAGISTRATE JUDGE

4